NEW-YORK,<br>May, 1830.<br><br>Sheldon<br>v.<br>Skinner.

Judgment affirmed.

---

SHELDON vs. SKINNER.

Where a party received from another a number of hogs to fatten on shares, and when they were fattened gave notice to the owner and required him to attend to the division of the hogs within three or four days and take away his share; and on the owner refusing to attend for that purpose, made a division himself and turned the owner's share loose into the street; *it was held*, that the party was guilty of a violation of duty in turning the hogs into the street and liable to damages.

*It seems*, that it was the duty of the party receiving the hogs to have made a tender of the share belonging to the owner at the yard of the owner, being the place where he received them.

But if the party, under the circumstances of the case, after the division, was discharged from his liability under his *contract*, he was notwithstanding bound to take care of the property assigned to the owner, though the keeping of it in such case would have been at the risk and expense of the owner.

The property being turned into the street being *prima facie* evidence of its destruction, and the parties being considered as tenants in common, *it was held* the owner was entitled to maintain *trover* against his co-tenant.

ERROR from the Monroe common pleas. Skinner sued Sheldon in a justice's court, and declared in one count in *trover* for the conversion of fifty hogs, and in another count in *case* on bailment, by which the plaintiff let the defendant have fifty hogs to fatten on shares; that the defendant turned the hogs into the highway and they were lost. The defendant *p leaded*, 1. Not guilty, and 2. That on or about the 1st August, 1828, the plaintiff put with the defendant fifty hogs to fat and keep through the butchering season, (the defendant being a butcher,) and to deliver to the plaintiff one half; that the defendant kept them through the season, and then offered to divide with plaintiff, and gave him notice of the time and place; that the defendant did divide the same, and was ready and offered to deliver to the plaintiff on half, which the plaintiff refused to receive. There was also a notice of the same facts attached to the plea. To the second plea the plaintiff demurred, and assigned for cause that the plea amounted to the general issue. The defendant joined in demurrer. The cause was tried before the justice by a jury, who found for the plaintiff, with $50 damages; on which the justice rendered judgment. The defendant appealed to the Monroe common pleas, who gave judgment for the plaintiff on the demurrer, and awarded a venire to try the issue of fact. On the trial of the issue of fact, it appeared that in September, 1828, the defendant took from the plaintiff's yard 27 hogs to fatten on shares; on the 2d December, 1828, he gave notice to the plaintiff that the hogs were fattened, and that he must attend to the division of the same and take away his part of the hogs in three or four days or he, (the defendant,) would turn them into the street; to which the plaintiff answered that he should not take them away. On the 20th December, the plaintiff not coming to receive his share of the hogs, the defendant made a division of them and turned the plaintiff's share loose into the street. The counsel for the plaintiff requested the court to charge the jury that the defendant had no right to turn the hogs out in any event, and that under the circumstances of the case, he was not justified. The court charged the jury accordingly, to which charge the defendant excepted. The jury

found for the plaintiff with $42,22 damages ; on which ver-  
dict a judgment was entered for damages and costs.

*C. M. Lee,* for plaintiff in error.

*S. Boughton,* for defendant in error.

*By the Court,* SAVAGE, Ch. J. What particular points were discussed in the court below, the bill of exceptions does not disclose. I presume, however, that the ground on which the court decided was that the tender should have been made to the plaintiff at his yard, where the hogs were taken by the defendant : and that turning the plaintiff's share of them into the street was not a delivery to the plaintiff. The contract, as stated, is merely that the defendant should fatten the plaintiff's hogs on shares. What share each was to have is not stated. It is fair to presume that each was to have half, and the defendant states in his plea that he offered the plaintiff one half. It does not appear by the bill of exceptions that it was urged by the plaintiff in the court below that the hogs were not fattened, that the notice was insufficient, or that the division was irregular. But the point presented seems to have been, whether turning the hogs into the street was a sufficient tender to the plaintiff. If any other point was intended to be raised here, it should appear to be presented by the bill of exceptions.

The contract in this case, growing out of the taking of the hogs to fatten on shares, has been discussed by counsel as as a promise to deliver to the plaintiff one half the hogs when fattened. In ascertaining the rights and duties of parties to a contract for the delivery of specific articles, much depends on the terms used. If this is a contract to deliver the hogs, the time and place must be ascertained from the nature of the contract. *First, as to time :* The time cannot be at any particular day, because that depends upon a contingency—the fattening of the hogs. It cannot be an obligation to be performed upon demand ; for the delivery is to be made when the hogs shall be fattened ; a fact which must be within the knowledge of the defendant in the court below, but not necessarily of the plaintiff. *Secondly, as to place :*

NEW-YORK,  If this were to be considered an obligation to deliver fat hogs,
May, 1830.  without any place being mentioned, the articles being such

Shelden     as are called cumbersome, the defendant would not be bound
v.          to carry them about with him to seek the plaintiff; but it
Skinner.    would be his duty to apply to the plaintiff to know where
they should be delivered, and to deliver them at such place,
if not an unreasonable one.   There are cases in which the
articles are to be delivered at a particular place from the na-
ture of the contract, though no place be mentioned.   Thus,
in an obligation by a merchant payable in goods, or by a
mechanic in articles manufactured by him, or by a farmer
payable in *country produce*, the place of payment is the store,
the shop or the farm of the obligor.   (5 Cowen, 516.)   But
in cases where the place of delivery is not designated by the
contract, either expressly or impliedly, the rule as above
stated is applicable; the obligor must seek the obligee, and
deliver the articles at the place he appoints, if reasonable.
(Co. Litt. 210, b.   *Slingerland* v. *Morse*, 8 Johns. R. 477.
4 Cowen, 453.)   In *Slingerland* v. *Morse*, the court consid-
ered the tender good, being made at the place where the
goods were received and where they had continued ; and in
that case there was proof that the plaintiff did not mean to
remove the goods from his tenant ; he only wanted to fix the
defendants with the amount of rent distrained for.   If a sim-
ilar tender in this case would be sufficient, such tender has
not been shewn.   There was no tender at the yard of the de-
fendant, but notice to the plaintiff to come and receive the
property. If, however, there is any analogy between the cases,
it seems to me to be this : that as the defendant had received
the property on the premises of the plaintiff, it was his duty to
deliver them at the same place.

Another question arises, and was probably most consider-
ed by the court below, to wit : Suppose the notice by the
defendant and subsequent tender, without objection to time
or place, sufficient to discharge the liability of the defendant
on his contract, was he justified in turning the hogs into the
street, and thereby causing a total loss to the plaintiff?   The
doctrine of this court is, that the effect of a tender and refu-
sal correctly made of a specific article is analagous to the

French *consignation.* (*Slingerland* v. *Morse,* 8 Johns. R. NEW-YORK, 474.) " The effect of a consignation, if it is adjudged to be May, 1830. valid, is, that the debtor is thereby absolutely discharged; Sheldon and although *subtilitate juris* he continues to be the owner v. of the things consigned until they are taken away by the Skinner. creditor, they are no longer at his risque, but at that of the creditor, who, from being a creditor of a certain ámount generally, becomes the creditor of the particular articles which are so consigned, *tanquam certorum corporum;* and he is no longer the creditor of his original debtor, who is entirely liberated, but of the consignatory, who obliges himself by a *quasi* contract to deliver the articles in his custody to the creditor if the consignation is adjudged good, or to the debtor if it is declared to be null. (Pothier, 378.) The creditor " must therefore resort to the specific articles tendered, and the person in whose possession they are holds them as his bailee and at his risk." (8 Johns. Rep. 478.) If it be conceded therefore, that the tender in this case was sufficient to discharge the defendant from his contract, it does not follow that he might abandon or destroy the property tendered. On the contrary, he was bound to take care of it at the risk and expense of the plaintiff. In the language of Kent, justice, (3 Johns. Cas. 258,) the defendant became trustee for the plaintiff for the safe keeping of the hogs. In the language of the court in *Slingerland* v. *Morse,* he held them as the plaintiff's bailee, and at his risk. It was the duty, therefore, of the defendant to have taken care of the hogs at the risk and expense of the plaintiff. It is asked, how was he to be paid for the keeping? The only answer necessary to be given is, that the law has provided a remedy in such a case. How is a bailee in any case to be paid; for instance an agister of cattle? The defendant having been guilty of a violation of duty in turning the hogs into the street, is liable for the damages: whether on the contract, or in a special action on the case, or in trover, are questions not arising upon this bill of exceptions.

In discussing the last question, I have taken for granted that the tender was sufficient; but I have previously stated

that supposing this is to be a case of payment in specific articles, the tender was not sufficient. In the case of *Coit v. Houston*, (3 Johns. Cas. 243,) the obligation was to deliver a quantity of coal, without specifying time or place. The defendants frequently urged the plaintiffs to take the coal,' they then having sufficient. The plaintiffs at one time said they would call and look at it. They once offered the coal for sale, and once promised to take it away; but they never refused. The court considered their conduct an acceptance of the coal, or a waiver of any further act on the part of the defendant. In this case there was no acceptance, nor did the plaintiff waive any rights which he had. When notified to come and take away the hogs, he said he should not ; but whether because they were not fattened, or because the defendant was bound to deliver them at his (the plaintiff's) yard, does not appear. On the question presented by the bill of exceptions, I entertain no doubt. The defendant was not justified in turning the hogs into the street.

There is another view of this case which strikes me as more correct. The plaintiff delivered to the defendant 27 hogs to be fattened on shares. The plaintiff was, before the delivery, sole owner. What were the rights of the parties after delivery to the defendant ? It seems to me they were tenants in common in each and every hog. If the hogs were fattened, the parties certainly were tenants in common before the division was made. It was not competent for one tenant in common of two chattels, without the consent of the other tenant in common, to appropriate one chattel to himself and the other to his co-tenant. One may dispose of his share of the property held in common, and the purchaser becomes a co-tenant with the other tenant in common. (15 Johns. R. 180.) The turning the hogs out in the street, without any further account of them, is at least *prima facie* evidence of a destruction; and the defendant below was entitled to recover in *trover*. One tenant in common may maintain trover against his co-tenant, where there is a destruction of the chattel. (3 Johns. R. 178. 2 id. 470.) In every point of view, therefore, the judgment below was right, and must be affirmed.