## FOBES *vs.* SHATTUCK.

Where personal property, severable in its nature, in common bulk, and of the same quality, is owned by several persons, as tenants in common, each tenant may sever and appropriate his share, if it can be determined by measurement or weight, without the consent of the others, and sell or destroy it, without being liable to them, in an action for the conversion of the common property.

C. raised wheat upon the plaintiff's land, on shares, under an agreement by which C. was to harvest and thrash the wheat, and the plaintiff was to take his half of it at his barn, in the half bushel, and C. was to have the other half. Before the wheat was harvested, C. sold his interest in it to the defendant, S. When the wheat was fit to be harvested S. proceeded to cut it, divide it in the sheaf, in the field, to draw one half of the sheaves into his own barn and to put the other half into the plaintiff's barn. The plaintiff forbade his cutting or drawing the wheat, and claimed it all as his own. S. drew away what he claimed as his share—about one half the sheaves—and the plaintiff took what S. had left. In an action of trover against S. for the conversion of the wheat, *Held* that the plaintiff could recover no more than the value of his share of the wheat taken by S. That although it appeared that S. took only his half of the crop, yet that, to be entitled to that, he was bound to thrash and clean the plaintiff's half, and deliver it at his barn by measurement. And that if the wheat was to be considered as divided in the sheaf, then S. got more than his share, by the value of the labor necessary to thrash and clean the plaintiff's half.

*Held further*, that the performance of this labor by S. being prevented by the act of the plaintiff in claiming the whole of the wheat, and taking, thrashing and disposing of his own half as divided by S., and in taking possession of the field, the plaintiff might be considered as waiving the performance of any further acts by S. as a tenant in common, and as electing to rely upon his ownership of the whole of the wheat.

Where a farm is let on shares, for cultivation, and wheat is raised thereon, by the tenant, the straw is a part of the crop, and belongs to the owners thereof; unless there is some stipulation or custom to the contrary.

It does not necessarily belong to the farm, nor is there any general usage requiring it to be used, as manure, upon the land where it grew.

THIS was an appeal from a judgment entered upon the report of a referee, bringing up certain exceptions taken upon the hearing. The action was for converting a quantity of unthrashed wheat and straw of the plaintiff. The answer denied every allegation in the complaint; claimed property in the wheat and straw in the defendant, and also a license from the plaintiff to take it. The referee made his report in favor of

Fobes *v.* Shattuck.

the defendant, upon which judgment was entered. It appeared that the wheat which was the subject of the action was raised on the ·plaintiff's land, by William Cleland, upon shares. That Cleland was to harvest and thrash the wheat and the plaintiff was to take his half of it, at his barn, on his farm, in the half bushel, and Cleland was to have the other half. Before the wheat was harvested, Cleland sold his interest in it to Shattuck, the defendant. When the wheat was fit to be harvested Shattuck proceeded to cut it, divide it in the sheaf, in the field, to draw one half of the sheaves into his own barn, which was on an adjoining farm, and to put the other half into the plaintiff's barn. While he was thus employed the plaintiff came to him, forbade his cutting or drawing the wheat, and claimed it all as his own. Shattuck did draw away what he claimed as his share, and the plaintiff took, and drew into his own barn, what sheaves Shattuck had left, and raked the field.

*J. L. Brown,* for the appellant.

*Wm. G. Bryan,* for the respondent.

*By the Court,* MULLETT, J. This presents an inquiry into the rights and liabilities of tenants in common of personal property. Tenants in common are said to be seised or possessed of the subject of the tenancy *per my et per tout,* by the moiety and by all ; having each the possession as well of every part as of the whole. Consequently, one tenant in common cannot maintain an action of trespass or trover against his co-tenant, for the thing held in common, merely for taking and holding it. (2 *Caines' R.* 166, 2 *John.* 468. 3 *id.* 175. 15 *id.* 179. 9 *Wend.* 338.) As a general rule, the property held in common cannot be divided, unless by the consent of all the owners. One tenant in common cannot set apart a portion of the common property, for his co-tenant, and hold the remainder as his own, however just may be the division. (4 *Wend.* 530.) This must be so, when the property held in common consists of several things of different qualities or value, or where it embraces

but one thing, which cannot be divided without destroying its nature or identity. One tenant in common can sell and convey his interest in the joint property, and the purchaser will become a tenant in common with the other owners, subject to the rights and obligations of the person whose interest he has purchased. By the civil law tenants in common were under an implied engagement to divide the property held in common, when any one of the parties concerned desired it. (*Domat, B.* 2, *tit.* 5.) By several ancient English statutes, the same result might be attained in respect to real property, by the aid of the court of chancery. (*Coke's Inst. by Thomas, vol.* 1, *p.* 789, *n.* 20.) The substance of these statutes was early adopted in this state, and is still continued. (2 *R. S.* 242, 2*d ed., and references.*)

Mr. Justice Johnson, in delivering the opinion of the court in the case of *Tripp* v. *Riley,* (15 *Barb.* 334,) says : ".The common law gave tenants in common, of personal property, no remedy by any legal proceedings for partition. They were compelled to resort to equity when they could not agree upon severance of their respective interests, and the common property was not in its nature severable. But I apprehend that the right of severance, amongst tenants in common, by one tenant, of his share, always existed at common law, as to all property in its nature severable. That partition of personal property, held in common, was always a matter of absolute right, both by the civil and common law ; and might be called for by either tenant, at any time." And the learned judge gave it as his opinion that where personal property, severable in its nature, in common bulk, and of the same quality, is owned by several as tenants in common, each tenant may go and sever and appropriate his share, if it can be determined by measurement or weight, without the consent of the others, and sell or destroy it without being liable to them, in an action for the conversion of the common property. It appears that this opinion of Judge Johnson was adopted by the learned court of the 7th district, at a general term, who allowed the plaintiff to recover for his individual share of a quantity of thrashed wheat held by him in common with another, and which had been taken and carried away by the de-

Fobes *v.* Shattuck.

fendants, who had no interest in the wheat, but were mere strangers and wrongdoers; the non-joinder of the other owner not having been pleaded in abatement. But this decision does not authorize one tenant in common to do any thing to the common property which may diminish its value as a whole, or injure or endanger the interest of his co-tenants; such as severing and converting a portion of a growing crop of grain, before it is ready for harvest or ultimate use; severing and converting part of a number of animals in the process of fattening, to be butchered for sale or food; or severing and converting a portion of any common property in the process of being improved for the benefit of the owners. (4 *Wend.* 530, *above cited.*) In such cases each tenant owes to the other tenants his exertions, according to the nature and terms of his connection with them, for the preservation and improvement of the common property; and the property, as between them, is not severable until its maturity. In the case under consideration, it is not denied that the wheat was ripe and ready for the harvest. It was the defendant's duty to harvest, thrash and clean it, and to deliver one half of it to the plaintiff, at his barn on the farm, measured in the half bushel. Instead of taking all the wheat to the plaintiff's barn, to be threshed and cleaned there, the defendant was proceeding to divide it in the sheaf, and to take one half to his own barn, and the other to the plaintiff's, when the plaintiff came, claimed the whole wheat as his, forbade the defendant's drawing or touching any of it, and procured the defendant and the men in his employ to be arrested, for what they had done. It is true that the plaintiff was entitled to have his half of the wheat, when thrashed, delivered to him in the half bushel, at the barn on his farm, but I do not see any thing in the terms or nature of his contract with Cleland that requires that the whole crop of wheat should be thrashed there. Suppose the defendant had cut, thrashed and cleaned the wheat with the same machine, at the same time, in the field, and then delivered the plaintiff's half to him, by measurement, at his barn, would he have had any reason to complain, or to claim the other half of the wheat as a tenant in common with the defendant? All the labor ne-

cessary to harvest and fit the wheat for a division was to be done by the defendant, and it is not easy to understand why he might not take a part of the wheat in the sheaf into the plaintiff's barn, and a part into his own, near by, to be thrashed, and afterwards measure and deliver to the plaintiff his half of the cleaned wheat, at his own barn. It appears that the defendant was proceeding to do this, when he was stopped, and prevented by the claim and conduct of the plaintiff, which might have amounted to a constructive conversion, on his part, of the whole crop of wheat. The referee found, as matters of fact, that the defendant did cut, take, carry away and convert what was by estimate one undivided half of the wheat; and that the plaintiff took, and carried away, the other undivided half thereof. That the defendant had no more of the wheat than he was entitled to. And upon these facts he reported in favor of the defendant. There was no evidence to sustain the assumption of the plaintiff that he owned the whole wheat. It belonged to him and the defendants as tenants in common, and so the referee found. As this was an action of trover, for the conversion, by the defendant, of a quantity of wheat, belonging to the plaintiff, he could recover no more than the value of his share of the whole wheat taken by the defendant. It appears that the defendant got no more than his half of the whole wheat; but to be entitled to that, he was bound to thrash and clean the plaintiff's half and deliver it at his barn, by measurement. If the wheat was to be considered as divided in the sheaf, then the defendant got more than his share, by the value of the labor necessary to thrash and clean the plaintiff's half. There was evidence tending to prove that the performance of this labor, by the defendant, was prevented by the plaintiff, who claimed the whole wheat, and took, thrashed and disposed of his own half as divided by the defendant, and took possession of, and raked the field. By this claim and conduct the plaintiff might have been considered as waiving the performance of any further acts by the defendant, as a tenant in common, and electing to rely upon his ownership of the whole wheat. This appears to have been the view taken of the

Fobes *v.* Shattuck.

matter by the referee, and I see no error in his finding, as respects the grain.

The plaintiff, at the trial and on the argument of the appeal, claimed all the straw as his, and demanded judgment against the defendant for carrying away and converting one half of it, of the value of $20. The plaintiff's claim to the whole of the straw is founded on the assumption that, by the practice of good husbandry, the straw of wheat is spread upon the land where it grew, to repair the soil, and is therefore to be considered in law as manure. In the case of *Middlebrook* v. *Corwin,* decided in 1836, Mr. Justice Nelson, giving the opinion, (15 *Wend.* 169,) the court held that where a farm is taken by a tenant, for agricultural purposes, the manure made upon it belongs to the farm, and not to the tenant, and at the expiration of his term the tenant has no right to remove or dispose of it. This was a case between landlord and tenant, and related to the manure produced by twenty cows, a pair of working oxen, and other cattle, put on the farm by the landlord, and which was sold by the tenant to the defendant, and taken from the barn-yard, on the farm, shortly before the expiration of the tenant's term. In the case of *Goodrich* v. *Jones,* decided in 1841, Cowen, J. delivering the opinion, (2 *Hill,* 142,) it was held that manure lying in a barn-yard, on a farm, at the time of the conveyance, though laid up in heaps, passed by the conveyance of the farm to the purchaser. (*See the cases referred to by Judge Cowen.*) The correctness of those decisions is not doubted, but it is denied that wheat straw is embraced by the term *manure,* as used in those cases; or that it is shown to be so uniformly used by farmers to enrich their land, as to constitute a reservation of it for that purpose an implied stipulation on the part of the landlord who lets his land for agricultural purposes. Admitting that the defendant was under an implied engagement to use the plaintiff's land according to good husbandry, there was no proof that good husbandry in that section of country or neighborhood required the straw to be used upon the land, as manure. (4 *East,* 154.) As remarked by Mr. Justice Nelson, in the case of *Middlebrook* v. *Corwin,* what may be good husbandry in re-

spect to one particular soil, climate, &c. may not be so in respect to another. Besides, straw is valuable for other purposes besides manure, and is frequently the subject of sale, as personal property. Upon the whole I think the straw is a part of the crop, and belongs to those who own the crop; unless this principle is controlled by some stipulation or custom to the contrary, and none was shown in this case. The finding of the referee was therefore right in reference to the straw.

The judgment appealed from must be affirmed.

[ERIE GENERAL TERM, November 13, 1854. *Marvin, Mullett, Bowen* and *Greene,* Justices.]