RICHARD COUNSEL *against* THE VULTURE MINING COMPANY. OF ARIZONA.

Defendants having agreed to pay plaintiff for his services " at the rate of sixty dollars per month in gold *bullion*, valued at sixteen dollars per ounce in gold coin of the United States : " *Held*, that the plaintiff's wages were payable in money, and that he could sue for them without making demand.

The derivation and meaning of the term " bullion," considered and explained.

Where payment is to be made in anything besides money, and it appears, or is necessarily implied from the terms of the contract and the nature of the articles to be received in payment, that it was the intention of the parties that the debtor is to deliver them at his residence, or otherwise when requested by the creditor, then a special request to deliver them must be made to the debtor before suit is brought, but in all other cases no demand is necessary before suit for a debt. *Per* Chief Justice DALY.

APPEAL by defendants from a judgment of this court entered on the decision of a judge after a trial before him without a jury.

The complaint alleged that the plaintiff had worked for the defendants for three years and six months, under a contract with the defendants to pay him " at the rate of sixty dollars per month in gold bullion, valued at $16 per ounce in gold coin of the United States," and that there was a balance due him of $1,417 55 in gold coin of the United States, with interest from July 20th, 1872. No demand of payment was alleged. On the trial the defendants admitted the allegations of the complaint to be true, but insisted that they did not constitute a cause of action. No evidence was offered by the defendants,

and the court ordered judgment for the amount alleged in the complaint to be due.

*W. S. Logan*, for appellants, argued that the contract of the defendants was to pay the plaintiff in merchandise, and that a demand was necessary before suit brought, and cited *Lobdell* v. *Hopkins*, 5 Cow. 516; Chipman on Contracts, 49; Parsons on Contracts, 5th ed. p. 651; *Smith* v. *Leavenworth*, 1 Root, 209; *Bach* v. *Owen*, 5 Term Rep. 409; *Chandler* v. *Winship*, 6 Mass. 310; *Benner* v. *Executors of Howard*, Taylor's N. C. Rep. 186; *Moore* v. *Hudson River R. R. Co.* 12 Barb. 186; 2 Kent's Com. 505.

*Wehle & Rowan*, for respondent.

DALY, Chief Justice.—I think that the reason which dispenses with the necessity of a demand before action brought, where the debt is due and is by the contract payable in money, applies in this case. If the payment is to be made in money, it is the duty of the defendant, when the debt is due, to seek the plaintiff, in order to make the payment (*Goodwin* v. *Holbrook*, 4 Wend. 379; 2 Kent's Com. 506). Where a person contracts generally to pay a sum of money, he is liable to the creditor everywhere (*per* BAYLEY, J., in *Sanderson* v. *Bowes*, 24 East, 500), and consequently a tender or offer to pay before suit brought, with a deposit of the amount due in court, so as to be relieved from the payment of the costs of the suit, is all that is available to the defendant in the action (*Birks* v. *Trippet*, 1 Sand. R. 42, note 2; *Pether* v. *Skelton*, 1 Str. 338; *Whitlock* v. *Squire*, 10 Mod. 81; *Fenton* v. *Gondry*, 13 East, 459).

But if the payment is to be made in specific articles, such as grain, timber, produce, groceries or the like, then a demand may be necessary, for the reason given by Coke, that he who is to perform is not bound to carry the property about, seeking the other party, but it is for the other to go and get it, or to appoint where he will receive it, that it may be delivered to him (Coke Lit. 210 b); and in the same note Coke marks what

he calls the "ducisitic" between money, which in his time meant gold, silver or copper coin, and "things ponderous, or of great weight."

The agreement in the present case was to pay the plaintiff at the rate of sixty dollars per month, in gold bullion, valued at $16 per ounce in gold coin of the United States, and board and lodge him; and the averment is, that under this agreement the plaintiff worked for the defendants for the period of three years and six months, when there was a balance due him of $1,417 45 in gold coin of the United States, with interest on the same from the 20th of July, 1870.

In my judgment, this was an agreement for the payment of money within the meaning of the rule which requires a demand where payment is to be made in specific articles, but dispenses with it when the payment is to be made in money. Contracts for the payment of a debt or obligation in specific articles are of exceptionable occurrence; the cases relating to them are not very numerous; they are chiefly in this country, and were most of them determined at a period when such contracts were more common than they are now.

They are cases in which the specific articles were, either by the express terms of the contract deliverable upon demand, or or where a demand was necessarily implied, the contract being silent both as to the time when, or as to the place where, the articles were to be delivered; or where, from the nature of the specific article or articles and the terms of the contract, it was manifest that the article was to be delivered at the obligor's residence or place of business, as where the agreement is to pay in *farm produce*, which should be demanded of the debtor at his farm before he can be said to be in default, or where, from the bulky or peculiar nature of the article, it is the duty of the obligor to inquire, and of the creditor to inform him, where it is to be delivered (*Smith* v. *Leavenworth*, 1 Root, 209; *Benner* v. *Howard*, Taylor's N. C. R. 186; *Robbins* v. *Luce*, 4 Mass. 474; *Greenwood* v. *Curtis*, 6 Mass. 364; *Thomas* v. *Roosa*, 7 Johns. 461; *Slingerland* v. *Morse*, 8 Id. 472; *Lobdell* v. *Hopkins*, 5 Cow. 516; *Ewing* v. *French*, 1 Blackf. 170; *Bach* v. *Owen*, 5 T. R. 409; *Russell* v. *Ormsbee*, 10 Verm.

274; *Downer* v. *Frizzle,* Id. 541; *Sheldon* v. *Skinner,* 4 Wend. 528; *Goodman* v. *Holbrook,* Id. 377; *Lamb* v. *Lathrop,* 13 Id. 97; *White* v. *Perley,* 3 Shep. 470; *Bean* v. *Simpson,* 4 Id. 49; *Howard* v. *Miner,* 7 Id. 325; Chipman on Contracts for the Payment of Specific Articles, 26, 27, 49; 2 Kent's Com. 505; 2 Parsons on Contracts, 659, note, 5th ed.)

It is somewhat difficult to say what these cases collectively determine; but I think substantially that it amounts to this, that where it appears, or is necessarily implied from the terms of the contract and the nature of the articles that are to be received in payment, that it was the intention of the parties that the debtor is to deliver them at his residence, or otherwise, when requested by the creditor; that a special request to deliver them must be made to the debtor before he can be sued for the non-performance of the contract.

It is argued that such is the case here, the agreement being to pay in bullion, which it is urged is a specific article, bullion being merchandise. But in the same sense coin may be regarded as merchandise; for it is not its coinage which makes it the standard by which other commodities are measured, but its intrinsic value in the markets of the world as a precious metal. The precious metals are adopted as the general medium of exchange, because they have in themselves an intrinsic value, being used for many purposes, are produced in nearly equal quantities, at nearly equal cost, are portable and comparatively indestructible, and they have this value coined or uncoined; for the stamp which the government impresses upon the coin is simply a guaranty of its weight and fineness. Bullion, when the word is used in a financial sense, for it has other meanings (Nares' Glossary, ed. of 1872; Wedgwood's Eng. Etymology), imports uncoined gold and silver, either smelted, refined, or in the condition in which it is used for coining, and has, from the earliest period, been associated with or employed as a term denoting money. It is derived from the French word *billon,* which Savary, in his *Dictionnaire Universal de Commerce,* defines as a term for money, " *Terme de Monnoye;* " and one of the earliest English authorities upon those words that are derived from the French, Cotgrave, in

his French and English Dictionary of 1632, defines *bullion,* "money, *Monnoye de billon*." Bayley, more than a century afterwards, defines it in his English Dictionary of 1763, " money having *no stamp upon it ;* and our own contemporary authority, Webster, says, " the word is often used to denote gold and silver *coined* and *uncoined,* when reckoned by weight and in mass, including especially foreign or uncurrent coin " (Webster's Dict. Unabridged of 1864) ; and Locke, in his paper on Raising the Value of Money, so employs the word in this passage, " Foreign coin hath no value here for its stamp, and our coin is *bullion* in foreign countries."

In France, " *billon* " is used not only for coin, and [for the material before it is coined, but also for the mint or place where the precious metals are sent to be coined (Bescherelle Dictionnaire Universel de la Langue Francais) ; and bullion was formerly used in this sense in England (Wedgwood's Dictionary of English Etymology, p. 112; 27 Edw. III, st. 2, c. 14; 4 Hen. IV, c. 10). That the words " *billon* " and " *bullion* " should be associated with the idea of coin and used as terms to express it, very naturally follows from their etymology, both being derived from the Latin " *bulla,*" the name of the leaden seal which is affixed to the Pope's ordinances or decrees, imparting to them the term by which they are known of Papal Bulls. *Bulla* in the Latin meant any small object rounded by art, such as a boss or stud in a girdle, and was originally the small thin circular plate of gold or other metal, with some insignia or device engraved or stamped upon it, which was worn suspended from the neck by the children of Roman patricians as their distinguishing mark, and afterwards by all Roman children who were of free birth. From this origin it came in time to be used in the Latin for the seal hanging by a band to a legal instrument, or to the executive decrees of sovereigns or other public functionaries, as well as the term for the matrix or die with which a seal was impressed or a coin was stamped (Wedgwood's Dict. Eng. Ety. p. 112 ; Milman's Hist. of Latin Christianity, Book XII, c. XI; Smith's Greek and Roman Antiquities, *bulla ;* Phillip's New World of Words, *bull* ; Andrew's Lat. Lex. *bulla,* 2 ; Johnson's Dictionary, quarto, II ed.

*bull* ; Bailey's Dict. *bull, golden bull*, 2d & 20th eds. ; Brandes' Dict. vol. 1, p. 331).

It is stated in the defendants' points that the defendants are engaged in mining gold in Arizona, 3,000 miles from this city and 1,100 miles from San Francisco ; that money there is scarce, but uncoined gold is plenty ; that to enable the defendants to pay their workmen in money, or coin, they would have to send it over this long distance to have it coined and transport it back at great cost and delay, and therefore they pay in bullion ; it being obviously the intention of the parties in this agreement that the bullion should be paid at the mines, and that the obligation was upon the plaintiff to go to the mines and demand it. I draw from this statement, however, a different conclusion, which is, that having the material whereof money is made in great abundance, there was no occasion there for coin or bank bills, it being more convenient to use bullion as a circulating medium, and that to do so, its value was fixed in the words of this agreement, "at $16 per ounce *in gold coin of the United States*," which was in effect treating it as money. In other words, that the plaintiff's wages were sixty dollars a month, payable in bullion, it being there the circulating medium, which was in reality making them payable in money.

The judgment should be affirmed.

LARREMORE and J. F. DALY, JJ., concurred.

Judgment affirmed.