Lake Erie and Western Railroad Company *v.* Naron *et al.*

---

## LAKE ERIE AND WESTERN RAILROAD COMPANY *v.* NARON ET AL.

[No. 2,230. Filed September 23, 1897.]

RAILROADS.—*Damages From Fire Escaping From Right of Way.— Special Verdict.—Evidence.*—In an action against a railroad company for damages caused by fire escaping from its right of way, a special verdict awarding plaintiff damages will be set aside, where there was no evidence as to where the fire originated, and no circumstances shown from which it could be inferred that the fire originated on the right of way. *pp. 199–200.*

SAME.—*Burning Combustibles From Right of Way.*—A railroad company may burn combustibles from its right of way, and in doing so is held to no higher degree of care than a cautious and prudent man should use in removing combustibles from his own premises. *p. 200.*

From the LaPorte Circuit Court. *Affirmed in part, reversed in part.*

*Mortimer Nye, W. E. Hackedorn* and *J. B. Cock-rum,* for appellant.

*M. H. Weir* and *E. E. Weir,* for appellees.

ROBINSON, J.—Appellant appeals from a judgment in appellees' favor for the loss of certain property by fire.

The first paragraph of the complaint alleges, that for a long time prior to the 10th day of August, 1893, appellant had negligently and carelessly suffered and permitted dry grass, weeds, and other combustible material to accumulate and remain on its right of way; that on said day fire was emitted from a locomotive, and ignited said material, and from thence said fire was negligently suffered and permitted by appellant to escape, and was communicated to grass and weeds on the lands of appellees, and to a dwelling house situated thereon, and burned said dwelling house and certain fruit trees, all without appellees' fault or negligence; that at the time of said fire the ground was in a very dry and parched condition, as was all kind of vegetation.

The second paragraph seeks to recover the value of certain fencing destroyed on the 14th day of the same month.

The special verdict shows, in substance, the following facts: On the 10th and 14th days of August, 1893, appellees were the owners of certain land on which were a frame dwelling house, fruit trees, and fencing; appellees' land adjoined appellant's right of way. On the 10th day of August the house and twelve fruit trees were destroyed by fire, and on the 14th of August thirty rods of fencing was burned. At the time they were burned, the house was worth $125.00, the trees $25.00, and the fencing $15.00; the house was about ten rods from a highway, and from three to five rods

from appellant's railroad track, and the trees were situated around the house; the fence intersected the fence of appellant; for a month or more before the fires the weather had been very dry, and little or no rain had fallen, all vegetation in the locality of appellees' lands was in a very dry and parched condition; at the point where the right of way of appellant passed the house there had accumulated a large amount of very dry, dead, and parched grass and weeds, which appellant knew; the grass and weeds were about three feet high, but had fallen down and were matted on the ground, and extended from the roadbed on the right of way to the fence dividing the right of way from appellees' lands, and were easily ignited; there was nothing to prevent the fire, after having been ignited on the right of way opposite the house, from spreading to appellees' lands; appellant had not cleaned its right of way of grass and weeds for a long time before the fire; on appellees' land between the house and right of way there was standing dead dry grass about six inches high; sparks of fire from locomotives on the 10th and 14th days of August set fire to the grass and weeds on the right of way, and communicated to grass and weeds on appellees' land, and burned the house and fencing and killed and destroyed the fruit trees; the house was unoccupied, and none of the appellees knew of either fire until after it had occurred; that appellees were entitled to $125.00 for the burning of the house, $25.00 for the fruit trees, and $15.00 for the fence, in all $165.00; there was no evidence whether any of the appellees were present at either fire; on the 10th of August the wind was in the southwest, and the fire was first discovered between 3 and 4 o'clock in the afternoon; fire was first discovered in the southwest corner of the house; the locomotive set out the fire on the west

side of the track on the right of way; the fire got to the building by running in the dry grass and weeds from the railroad to the building; the fire that burned the house started on the right of way.

The only question discussed by appellant's counsel is that the special verdict is not sustained by the evidence. It is argued that there is no evidence that the fire on the 10th of August started on the right of way and that it escaped from the right of way to appellees' property.

The evidence as to the origin of the fire on the 10th of August was, in substance, as follows:

Alfred Blank testified that he lives about a half a mile northeast of the house that was burned; he first saw smoke, had seen a locomotive go south a short time before that; when he saw the smoke he went up on a hill about half way to the fire and saw the house burning; he went over to the fire; no one was there; saw fire on right of way west of the track; grass was burning there; the house was burning on the south side; took fire on the southwest side; the southwest corner was on fire when he got there; John Swanson and Mr. Hultgreen came soon after; "Swanson and I killed the fire to keep it from going to the barn; don't remember that the grass was burning east of the track, a wide strip between the railroad track and the house was burned over; when first got there the flame was coming out next to the roof; don't know whether it was burning clear down to the ground or not." On cross-examination the witness testified: "Don't remember to have seen any of the section men there that day; could not see the house from where was at work when first saw the smoke; had been there about a minute or two when the fire broke out of the roof; think the fire was between the plaster and outside batting; after the house burned down found the grass had

been burned on the railroad; could not say when the grass burned—when it started." On re-direct examination: "Q. You saw that it was burning on the right of way and over into the place when you first went there?" "A. It was burning in the place, yes, sir." Re-cross-examination: "Didn't look anywhere about the right of way until put out the fire that was running toward the barn, and when that was completed saw that it had burned on the right of way." Re-direct examination: "Don't know whether looked right of way or not; crossed the right of way several rods below the house and don't know whether it had burned there or not; the grass was burned all about the house when he got there, and about half way to the barn." Re-cross-examination: "Didn't look when I got there whether it was burning all around the house and don't know whether it was or not."

John Swanson testified: "First saw smoke; could not see the house; went upon the hill four or five rods and saw the house burning; went over and saw Alfred Blank there; helped put out the fire going west towards the barn; all the grass was burned then from the railroad track to the house." On cross-examination: "Fire was on southwest corner when first saw it, pretty near up to the roof, smoke coming out of roof." Fred Hultgren testified: "Was working about 70 rods southwest from house that burned; could see the house; first saw smoke coming out of the house; went over to the house; didn't have to cross the track to go to the house; fire was in the whole house when I got there, burned all around the house; railroad right of way was all burned out when I got there; Alfred Blank and John Swanson were there when I got there." Charles Runn testified: "Live about 130 rods from house; was at home and first saw smoke coming from the house; when I got there Blank, Swanson and

Hultgren were there; the fire had burned all around the house and in the house and as far as out to the railroad track; roof fell in just as I got there." On cross-examination: "Couldn't see the house when I first saw smoke; the wind was from the southwest, nearly; was blowing from the house toward the railroad track; had been in the house about two years before that; it was then occupied, and was for twelve or thirteen weeks after that, and was unoccupied after that." Benjamin Welch testified: "On the 10th day of August was section foreman of the company and was in the vicinity of the house that burned, from 1 o'clock until about 3:15 in the afternoon, with six other men; burned off the right of way for about 500 feet each way from the house that burned; commenced burning it about 1 o'clock, burned it all off; got through little before 3 o'clock; when we got through burning, we took water and sprinkled all the fire we could see; a train came south at 3:15, and after it passed, put the hand car on the track and left; noticed that the locomotive did not emit any fire or sparks; a pretty good wind was blowing from the house toward the railway; burned the right of way up to the line and put all the fire out; we hauled water there and put out all the fire that could be seen anywhere where we burned off." Cross-examination: "Ed O'Brien, Phil Kimberly and Phil Seaster are all the names I can remember of those who were with me; none of them are here as witnesses and I don't know where any of them are except O'Brien, who is at Fishers, about twelve miles this side of Indianapolis; had orders from road master to burn off right of way; started the fire next to fence and burned toward track; didn't examine to see whether the engine emitted any sparks; I went up and down the space we burned to see if the fire was out; no fire left that we could see; was there next day and

Lake Erie and Western Railroad Company *v.* Naron *et al.*

saw grass was burned all around the house and out to right of way." Re-direct examination: "If any sparks had been emitted from the engine they would have gone east of the track with the wind." Re-cross-examination: "We selected the day we did to burn the right of way because the wind was blowing as it was."

It is not denied that the train went south over appellant's road about 3 o'clock on the afternoon of the fire. Whether the train was a heavily loaded train or not, or was going up grade or down as it passed the property burned, or that the circumstances were such that the locomotive probably threw out sparks of fire, does not appear from the evidence, except the testimony of the only witness who was present when the train passed, who testifies that it threw out no sparks.

We think the evidence fails to support the special verdict of the jury as to the first paragraph of the complaint. The appellee relied upon the negligent accumulation of combustibles on appellant's right of way, from which the fire was negligently permitted to escape to appellees' property. Attention was first attracted to the fire by smoke coming from the house. There is no evidence as to where the fire started which burned appellees' property. There is no evidence that it started on the right of way and then spread to appellees' property, and there are no circumstances from which such an inference can be drawn. It is not contended that appellant's locomotive was equipped with a defective spark arrester. It is not disputed that dry grass and weeds had accumulated on appellant's right of way prior to the day of the fire. The evidence shows that on that day appellant, by its employes, burned off the right of way on the side next to appellees' property for a distance of about five hundred feet each way. The witnesses all agree that the wind was from the most favorable

direction for such work. It appears that the fire was all extinguished next to appellees' property. Appellant had the right to burn off its right of way, provided due care was used to prevent it spreading to other lands. To permit dry grass and weeds to accumulate and remain upon a railroad right of way by means of which the spread of fire may be easily caused, is negligence, and if the fire originated, no matter in what manner, on the right of way in such combustible material, and was negligently permitted to escape to appellees' property, appellant would be liable for the loss. The undisputed evidence is that the company, through its employes, burned off the right of way. This it had the right to do, and in so doing it is held to no higher degree of care than a cautious and prudent man should use in removing combustibles from his own premises. There must be some facts or circumstances from which the inference can be drawn that the fire was permitted to escape from the right of way. In this, the record fails. Where it is shown that a fire was started on the right of way it does not necessarily follow that it escaped to adjoining property. Mere proof that the fire started on the right of way is not sufficient. *Taylor* v. *Pennsylvania, etc., R. R. Co.*, 174 Pa. St. 171, 34 Atl. 457.

Thus, in *Indianapolis, etc., R. R. Co.* v. *Paramore*, 31 Ind. 143, the court said: "It might, perhaps, be inferred that the fire originated, in some way, from a locomotive; but the only evidence from which such an inference can be drawn is that two trains, one a passenger and the other a freight train, had passed that point but a short time before the fire was discovered. But if it is inferred the fire thus originated, still there is not a particle of evidence to show that it was caused by any defect or imperfection of the machinery, or by any want of care or prudence on the part of those hav-

ing charge of the trains, unless such negligence is to be inferred, *prima facie*, from the fact of the fire, thus throwing on the defendant the burden of disproving negligence, without any affirmative evidence to establish its existence. The American cases, except in those states where it is regulated by statute, seem generally to concur in holding that no such inference can arise from the fact alone that a fire is thus produced. See Redf. Ry., sec. 125, 5, and cases there cited; *Terry* v. *New York Central R. R. Co.*, 22 Barb. 574; *Rood* v. *New York, etc., R. R. Co.*, 18 Barb. 80; *Field* v. *New York Central R. R. Co.*, 32 N. Y. 339." *Pittsburgh, etc., R. R. Co.* v. *Hixon*, 110 Ind. 225; *Louisville, etc., R. W. Co.* v. *Ehlert*, 87 Ind. 339; *Indiana, etc., R. W. Co.* v. *McBroom*, 91 Ind. 111; *Indiana, etc., R. W. Co.* v. *Adamson*, 90 Ind. 60; *Chicago, etc., R. R. Co.* v. *Bailey* (Ind. App.), 46 N. E. 688.

Not only is there no evidence that the fire escaped from the right of way, but it appears that a time was selected when the wind was most favorable, and that the fire was extinguished by the employes of the company before they left it. It is true, the jury had a right to disbelieve the witness who testified to these facts, but his evidence must be accepted as to the fire on the right of way, else there is a total failure of proof on that point.

We are not unmindful of the rule that this court can not weigh the evidence to determine where the preponderance lies, but where there is no evidence to establish an essential element in a party's right to recover, a judgment should not be permitted to stand.

There was some evidence that the fire on the 14th of August started on the right of way and spread to and destroyed the fencing as alleged in the second paragraph of complaint, and that the value of the fencing destroyed, as found by the jury, was fifteen dollars.

If appellees will, within sixty days from this date, remit one hundred and fifty dollars of the judgment, as of its date, the judgment will be affirmed as to the residue; otherwise, reversed, with instructions to sustain appellant's motion for a new trial.